******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* HAROLD PATTERSON
## (SC 20349)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn and Ecker, Js.

*Syllabus*

Convicted of two counts of the crime of murder, the defendant appealed
to this court. The defendant was a passenger in a car when the driver
stopped to speak to two women on a street in the city of Hartford.
When one of two men who had been walking behind the women told
the occupants of the car to leave, the defendant shot both men. The
police recovered spent cartridge casings at the scene, and, prior to
trial, the state filed a motion seeking to present evidence of uncharged
misconduct relating to two prior shootings on two different streets in
Hartford in support of its claim that the defendant had possessed the
means to cause the victims' deaths. Defense counsel objected, claiming
that such evidence was inadmissible because it was irrelevant and more
prejudicial than probative. The court ruled that the uncharged miscon-
duct evidence was admissible to prove means and identity, but it limited
the scope of the evidence to facts that connected the firearm used in
the prior shootings to the firearm used during the shooting of the two
victims. At trial, the state presented the testimony of S and D, the officers
who collected the fired bullets and cartridge casings following the prior
shootings that formed the basis of the uncharged misconduct evidence,
the testimony of L and W, friends of the defendant who identified him
as the shooter in those prior shootings, and J, a firearms expert who
testified, to a reasonable degree of scientific certainty, that the cartridge
casings from the prior shootings and the murders of the victims were
all from the same firearm. The court instructed the jury five times during
the trial that the uncharged misconduct evidence was being admitted
for the limited purposes of establishing that the defendant had the means
to murder the victims and establishing the identity of the shooter of the
victims. On appeal, the defendant claimed that the trial court improperly
had admitted the evidence of uncharged misconduct because J's testi-
mony was not relevant or material to identity, insofar as J's methodology
was not scientifically reliable, and because the prejudicial effect of the
prior misconduct evidence outweighed its probative value. *Held* that
the trial court did not abuse its discretion in admitting the evidence of
uncharged misconduct tying the firearm used in the prior shootings to
the firearm used in the murders of the victims to prove that the defendant
was the individual who shot the victims: the defendant's claim challeng-
ing the relevance of J's testimony in light of its lack of scientific reliability
was unavailing, as the defendant's failure to request a hearing pursuant
to *State* v. *Porter* (241 Conn. 57) deprived the trial court of the opportu-
nity to assess J's methodology and, thus, the reliability of J's testimony,
the defendant's claim on appeal represented an inappropriate effort to
avoid the requirement that a challenge to scientific methodology must
be raised at trial during a *Porter* hearing, and, in view of the broad
definition of relevance, the trial court did not abuse its discretion in
admitting J's ballistics evidence tying the prior shootings to the shooting
of the victims to prove the identity of the shooter; moreover, any prejudi-
cial effect from the uncharged misconduct evidence was outweighed
by its probative value, as the facts of the prior shootings, which were
clearly probative of means and identity, were less severe than the facts
of the shooting of the victims, and the court limited the extent of the
testimony of S and D to their response to the prior shootings and
their collection of projectiles at the scene of those shootings, and the
testimony of L and W to their witnessing of the defendant shoot a firearm
at those locations, so as to ensure that the relevant facts were shorn
of prejudicial and irrelevant detail and that the jury was not distracted
by matters that were not pertinent to the charges; furthermore, the prior
misconduct evidence was not merely cumulative of other evidence but
highly probative, as it was the only evidence connecting the defendant
directly to the firearm used to shoot the victims, and L's and W's testi-

mony was critical to establishing the shooter's identity; in addition, the fact that the prior shootings occurred less than three months before the shooting of the victims contributed to the probative value of the uncharged misconduct evidence, and the court instructed the jury no fewer than five times throughout the course of the trial regarding the limited purpose for which the uncharged misconduct evidence could be used.

Argued March 24—officially released August 9, 2022

*Procedural History*

Substitute information charging the defendant with two counts of the crime of murder, brought to the Superior Court in the judicial district of Hartford, where the court, *D'Addabbo, J.*, granted in part the defendant's motion to preclude certain evidence; thereafter, the case was tried to the jury before *Graham, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *David L. Zagaja* and *John F. Fahey*, supervisory assistant state's attorneys, for the appellee (state).

*Opinion*

D'AURIA, J. The defendant, Harold Patterson, directly appeals from the judgment of conviction, rendered after a jury trial, of two counts of murder in violation of General Statutes § 53a-54a. He claims that the trial court abused its discretion in admitting evidence of uncharged misconduct, namely, two prior shootings involving the alleged murder weapon, to prove identity and means. We conclude that the trial court did not abuse its discretion by admitting the uncharged misconduct. Accordingly, we affirm the judgment of conviction.

The jury reasonably could have found the following facts. Early in the morning on August 25, 2008, the defendant and two friends, Willie Walker and Mark Mitchell, were driving in a white Nissan Maxima on Edwards Street in Hartford. Mitchell was driving, with the defendant in the front passenger seat and Walker sitting behind the defendant. The defendant and his friends saw two women walking on the street with two men trailing behind the women. Mitchell then pulled over to speak to the women. One of the men then walked up to the passenger window of the car and told the defendant and his friends to "get the fuck out of here." The defendant replied, "what you mean get the fuck out of here," pulled out a gun, and fired at the men. Mitchell immediately drove away and brought the defendant home.

At approximately 3:15 a.m., Hartford police responded to an emergency call reporting the shooting. Officers who arrived found the bodies of two victims, Carlos Ortiz and Lamar Gresham. Detective Argeo Diaz processed the scene and seized five spent nine millimeter cartridge casings and a copper bullet jacket. Diaz attended the victims' autopsies, where he took possession of a bullet fragment removed from the leg of one of the victims, a bullet removed from the same victim's arm, and a bullet removed from the second victim's chest. Both victims died of gunshot wounds to the chest, lung, and heart. The case went cold for a number of years until a new lead was brought to the attention of detectives with the cold case unit of the Division of Criminal Justice. The defendant was arrested and charged with the crimes in 2016.

Prior to trial, the state filed a motion seeking to present evidence of two prior shootings in Hartford. The state sought to admit evidence of a June 5, 2008 shooting on Acton Street, which resulted in the death of Raymond Hite, as well as evidence of a June 16, 2008 shooting on Mather Street, which resulted in bullets striking a building and a vehicle. Eyewitnesses from each shooting identified the defendant as the shooter, and an analysis of the casings collected from each shooting revealed that they were fired from the same gun used in the present case. The state offered these prior incidents

to support its claim that the defendant possessed the instrumentality or means, as well as the specific intent, to cause the deaths of Ortiz and Gresham.[1]

Defense counsel timely objected to the state's motion, arguing that the trial court should preclude evidence of the uncharged misconduct. Specifically, counsel argued that the prior incidents "are not relevant or material to the issues of intent or means to the case at bar," that "the probative value of the evidence is substantially outweighed by the danger of undue prejudice," and that "admission of the evidence would be unduly cumulative, confusing and time-consuming, and would create distracting side issues that will complicate the main issues in the case at hand." Relying on *State* v. *Raynor*, 181 Conn. App. 760, 189 A.3d 652 (2018), rev'd, *State* v. *Raynor*, 337 Conn. 527, 254 A.3d 874 (2020), the defendant argued that, "[i]n . . . light of recent research on the validity of [ballistics] science, it is no longer appropriate to make absolute, unquestioned statements about what the ballistics findings were," and, therefore, admitting evidence of the prior shootings would be improper.

The trial court, *D'Addabbo, J.*, heard oral arguments and issued a preliminary ruling allowing evidence of both prior shootings. The court ruled that the evidence was admissible to prove means and identity but inadmissible to prove intent. The court further limited the scope of the evidence of both shootings to facts "tying the gun to the case at hand." As to the Acton Street shooting, the court precluded testimony that the defendant shot and killed Hite. The court similarly limited evidence of the Mather Street shooting to show only "that a witness observed the defendant in possession of the firearm on that date and that he fired the firearm . . . ." The court also ruled that expert testimony that tied the casings from the prior shootings to the casings found at the Edwards Street shooting was admissible contingent on the state's introducing other evidence that tied the defendant to the prior shootings. The court stated that it would give limiting instructions to the jury when the state offered the uncharged misconduct evidence and that it would "revisit its ruling at the time of the offer and assess it in light of the evidence admitted and the positions of the part[ies]."

At trial, when it planned to offer evidence of the Mather Street shooting, the state asked the trial court, *Graham, J.*, to issue a final ruling on the uncharged misconduct evidence. Defense counsel objected to the "whole line of inquiry . . . ." The court adopted Judge D'Addabbo's preliminary ruling that evidence of the uncharged misconduct was admissible to prove means and identity, with the same limitations on the scope of the admissible evidence. Further, the court ruled that, until the state tied the casings from the prior shootings to the same gun that ejected the casings found on

Edwards Street, the purpose of the evidence would be limited to proving means.

Prior to the state's offer of evidence of the Mather Street shooting, the trial court instructed the jury: "I anticipate [that] you will hear testimony to the effect that the defendant possessed and fired a firearm on June 16, 2008, on Mather Street in Hartford. And, as to that evidence, the evidence is being admitted at this time solely to the extent it bears [on the defendant's] having [had] the means to commit the crimes on trial before you. That conduct . . . is not the subject of any criminal charge in this case, and it is not being admitted to prove the bad character of the defendant or any propensity by him to commit crimes. And you may not consider that evidence as establishing a predisposition on the part of [the defendant] to commit crimes or to demonstrate a criminal propensity to commit the crimes charged here."[2]

As to the Mather Street shooting, the state offered the testimony of Officer Brian Sulliman and Stephon Long, a friend of the defendant. Sulliman testified that, on June 16, 2008, at about 2:50 a.m., he responded to an emergency call regarding gunshots fired at a multiunit building on the corner of Mather and Brook Streets. From the scene, Sulliman collected one fired bullet from inside of a car parked in front of the building, one fired bullet from a bedroom in one of the units, and seven spent nine millimeter shell casings from outside of the building. Long testified that, on June 16, 2008, he drove the defendant's Dodge Durango to a building located on the corner of Mather and Brook Streets, where the defendant instructed him to stop. Long saw the defendant fire two or three gunshots at the building. Long believed that the gun was a semiautomatic but could not describe a specific model or the color of the gun. Immediately after Long testified, the trial court again instructed the jury that the evidence "was admitted solely to the extent it bears [on] the [defendant's] having [had] the means to commit the crimes on trial before you."

As to the Acton Street shooting, the state offered the testimony of Diaz and Walker. Diaz testified that, on June 5, 2008, he responded to an emergency call on Acton Street, where he located and seized two fired bullets, a copper bullet jacket, and three spent nine millimeter shell casings. Walker testified that, on June 5, 2008, he drove the defendant's Dodge Durango to Acton Street, where the defendant exited the vehicle and fired a gun. Walker did not know what type of gun the defendant fired but remembered that it was dark in color. Immediately after Walker's testimony, the trial court instructed the jury a third time that the evidence pertaining to the Acton Street shooting was "admitted solely to the extent it bears [on the defendant's] having [had] the means to commit the crimes on trial before

you."

Edward Jachimowicz, the state's firearms expert, testified regarding the connection between the bullet casings found at all three shootings. Jachimowicz testified that, based on a microscopic examination and comparison, he concluded that all of the shell casings, bullets, and bullet fragments found at the Edwards Street shooting, where the victims in the present case were found, had been fired from the same semiautomatic weapon. Jachimowicz testified that he entered the shell casings into the NIBIN system,[3] which showed a suspected correlation to casings collected in three prior shootings. Jachimowicz compared the physical evidence from the prior shootings to the casings from the Edwards Street shooting to verify the connection.[4] His opinion, to a reasonable degree of scientific certainty, was that all of the cartridge cases from the previous shootings and Edwards Street were from the same firearm. After Jachimowicz' testimony concluded, the court instructed the jury that the evidence matching the casings from the Edwards Street shooting to the Acton Street and Mather Street shootings was "admitted solely to the extent it bears [on] the identity of the person who committed the Edwards Street shootings." In its final charge, the court again instructed the jury that evidence of the Acton Street and Mather Street shootings was admitted "solely to the extent [the evidence] bear[s] [on the defendant's] having [had] the means to commit the crimes . . . and to the extent [the evidence] bear[s] [on] the identity of the person who shot [the victims]."[5]

The jury returned a verdict of guilty on both counts, and the court sentenced the defendant to consecutive terms of fifty years of imprisonment on each count for a total effective sentence of 100 years.

On appeal, the defendant claims that the trial court abused its discretion by admitting evidence of uncharged misconduct. Specifically, he argues that (1) Jachimowicz' expert testimony was not relevant or material to identity, and (2) the probative value of the evidence was "vastly" outweighed by its prejudicial effect. The state responds that the defendant's relevancy claim was not preserved and is therefore unreviewable, and that the trial court did not abuse its discretion in determining that the probative value of the evidence outweighed its prejudicial effect.

"[A]s a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Internal quotation marks omitted.) *State* v. *Raynor*, 337 Conn. 527, 561, 254 A.3d 874 (2020). This evidence may be admissible, however, for other purposes. "The well established exceptions to the general prohibition against the admission of uncharged miscon-

duct are set forth in § 4-5 [c] of the Connecticut Code of Evidence, which provides in relevant part that [e]vidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." (Internal quotation marks omitted.) Id., 561–62.

"We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (c) of the Connecticut Code of Evidence]. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Footnote omitted; internal quotation marks omitted.) Id., 562.

The defendant argues that Jachimowicz' testimony connecting the Acton Street and Mather Street shootings to the Edwards Street shooting is not "unassailably relevant" to prove identity.[6] (Emphasis omitted.) Specifically, he argues that, because Jachimowicz' methodology was not scientifically reliable, his testimony failed to connect the two prior shootings to the shooting at issue to establish identity, and, thus, the prior shootings were irrelevant. The defendant concedes that whether Jachimowicz should have been able to testify as an expert in this case is not reviewable by this court, as he did not request a hearing at trial pursuant to *State* v. *Porter*, 241 Conn. 57, 81–90, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and acknowledges that a *Porter* hearing "is the proper way to challenge the admissibility of an expert's opinion based on the validity of the methodology underlying that opinion." Instead, through his relevancy objection to the prior misconduct evidence, the defendant attempts to challenge on appeal Jachimowicz' testimony connecting the Mather Street and Acton Street shootings to the Edwards Street shooting.[7] Specifically, he asks this court to assess the relevancy of Jachimowicz' expert testimony in light of its lack of scientific reliability. This request represents an inappropriate effort to avoid the requirement that a challenge to scientific methodology must be raised at trial via a *Porter* hearing.

This court in *Porter* "followed the United States Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and held that testimony based

on scientific evidence should be subjected to a flexible test to determine the reliability of methods used to reach a particular conclusion. . . . A *Porter* analysis involves a two part inquiry that assesses the reliability and relevance of the witness' methods. . . . First, the party offering the expert testimony must show that the expert's methods for reaching his conclusion are reliable. . . . Second, the proposed scientific testimony must be demonstrably relevant to the facts of the particular case in which it is offered, and not simply be valid in the abstract. . . . Put another way, the proponent of scientific evidence must establish that the specific scientific testimony at issue is, in fact, derived from and based [on] . . . [scientifically reliable] methodology." (Internal quotation marks omitted.) *State* v. *Edwards*, 325 Conn. 97, 124, 156 A.3d 506 (2017).

As this court has made clear, a party's failure to request a *Porter* hearing "results in waiver of that claim and it will not be considered for the first time on appeal." (Internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 678, 224 A.3d 129 (2020). It is improper for the defense to challenge the scientific methodology underlying an expert witness' opinion on appeal without a trial court's having ruled on the same matter, as a "trial judge . . . [should] serve as a 'gatekeeper' and make a preliminary assessment of the validity of scientific testimony . . . ." *State* v. *Porter*, supra, 241 Conn. 68. The question of whether evidence "casts sufficient doubt on the reliability of the methodology employed by the . . . expert [witness] . . . must be vested, in the first instance, in the sound discretion of the trial court." *State* v. *Raynor*, supra, 337 Conn. 542 n.7.[8] Because the defendant never asked for a *Porter* hearing, the trial court did not have the opportunity to assess the expert's methodology and, therefore, its reliability. As such, the defendant cannot now on appeal succeed on a relevance challenge based on his contention that the evidence lacks scientific reliability to establish a link to the murder weapon.

Having concluded that it is improper for this court to assess the scientific reliability of Jachimowicz' testimony for the first time on appeal, we now turn to the general relevance of his testimony. When assessing the relevance of an expert witness' testimony, "[a] trial court retains broad discretion . . . ." (Internal quotation marks omitted.) Id., 554. "[S]uch testimony is admissible if the trial court determines that the expert is qualified and that the proffered testimony is relevant and would aid the jury." (Internal quotation marks omitted.) Id. "Within the law of evidence, relevance is a very broad concept. Evidence is relevant if it has *any* tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination

of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, [as] long as it is not prejudicial or merely cumulative." (Emphasis altered; internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 587 n.19, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

Given the broad definition of relevance, we conclude that the trial court did not abuse its discretion in admitting the ballistics evidence tying the prior shootings to the Edwards Street shooting to prove the identity of the shooter in this case. Indeed, in *Collins*, this court surveyed the decisions of a number of federal and state courts and found that a majority of them "rejected challenges . . . to the use of uncharged misconduct evidence in cases wherein the charged offenses were committed using the same gun that the defendant had utilized in prior shootings." Id., 590.

Having concluded that the trial court did not abuse its discretion in determining that Jachimowicz' testimony was relevant, we turn to the defendant's argument that the prejudicial effect of the evidence of prior misconduct outweighed its probative value. The defendant challenges all testimony related to the prior shootings, not only the expert testimony. He contends that the uncharged misconduct evidence admitted at trial was equally, if not more, severe than the charged crimes because, even though the jury did not hear that one of the prior shootings resulted in Hite's death, the uncharged misconduct still left the jury with the impression that the defendant drove around at night and shot at buildings unprovoked.[9] We disagree and conclude that any prejudicial effect of the uncharged misconduct was outweighed by the probative value of the evidence.

"In determining whether the prejudicial effect of otherwise relevant evidence outweighs its probative value, we consider whether: (1) . . . the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) . . . the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) . . . the evidence offered and the counterproof will consume an undue amount of time, and (4) . . . the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) Id., 586–87.

We find significant the degree to which the trial court exercised its discretion to limit the extent of the evidence of the prior shootings it admitted. As to the Mather Street shooting, the court permitted Sulliman

to testify only that he responded to a shots fired call on the corner of Mather and Brook Streets at about 2:50 a.m., where he collected one fired bullet from inside of a car parked in front of the building, one fired bullet in a bedroom of one of the units, and seven spent nine millimeter shell casings outside of the building. The court did not permit Sulliman to testify whether anyone was in the bedroom or car where the bullets were found, or if anyone was injured in the shooting. Similarly, Long's testimony was limited to his having driven the defendant to a building on the corner of Mather and Brook Streets, where he witnessed the defendant fire two or three gunshots at the building. Long did not testify about the motive for the shooting or whether the defendant was shooting at a particular individual. Thus, the court took care to limit the impact of the prior misconduct testimony on the emotions of the jurors.

The court also limited evidence of the Acton Street shooting. Diaz' testimony was limited to his having responded to a shots fired call and having collected projectiles at the scene. Walker testified that he drove the defendant to Acton Street, where he witnessed the defendant exit the vehicle and fire a gun dark in color. The trial court did not allow Walker to testify about why he drove the defendant to Acton Street, which would have required a convoluted narrative involving more than five different individuals and multiple locations that would have likely confused the jury and distracted it from the main issue in the case. Most significantly, the court did not allow the state to introduce evidence that Hite was murdered in the Acton Street shooting, recognizing that such testimony could unfairly impact the emotions of the jurors. In limiting the evidence of the prior shootings, the court ensured that the relevant facts were shorn of prejudicial and irrelevant detail and that the jury was not distracted by the need to hold mini-trials regarding matters that were not pertinent to this case.[10]

The trial court's actions are significant because "the care with which the [trial] court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 406, 963 A.2d 956 (2009); see id., 406, 408 (by excluding "most egregious and prejudicial uncharged misconduct," trial court did not abuse its discretion when it admitted uncharged misconduct evidence); see also *State* v. *Blango*, 103 Conn. App. 100, 111, 927 A.2d 964 (trial court did not abuse its discretion by admitting uncharged misconduct evidence because evidence was limited to showing only that defendant displayed gun in separate incidents), cert. denied, 284 Conn. 919, 933 A.2d 721 (2007).

Because of the trial court's careful limits on the testimony, the evidence the jury heard about the Acton

Street and Mather Street shootings, which was clearly probative of means and identity, was much less severe than the evidence of the Edwards Street murders. This court repeatedly has held that "[t]he prejudicial impact of uncharged misconduct evidence is assessed in light of its relative 'viciousness' in comparison with the charged conduct." *State* v. *Campbell*, 328 Conn. 444, 522–23, 180 A.3d 882 (2018). "The rationale behind this proposition is that the jurors' emotions are already aroused by the more severe crime of murder, for which the defendant is charged, and, thus, a less severe, uncharged crime is unlikely to arouse their emotions beyond that point." *State* v. *Raynor*, supra, 337 Conn. 563. In the present case, the jury heard that the defendant fired only three to four bullets in each of the prior shootings and heard no evidence that individuals were injured or killed. Comparatively, the defendant was charged with shooting and killing two people on Edwards Street. The facts of the two prior shootings are less severe, making it less likely that they aroused the emotions of the jurors. See, e.g., *State* v. *Beavers*, supra, 290 Conn. 405 ("prior misconduct evidence admitted involved only the defendant's actual, claimed or threatened damage of property for personal gain, as compared to the charged crime in the . . . case, which contemplated [an] intentional killing"); *State* v. *Mooney*, 218 Conn. 85, 131, 588 A.2d 145 (seriousness of subsequent crime, larceny, paled in comparison to robbery and felony murder charges for which defendant was standing trial), cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

The defendant also argues that the uncharged misconduct evidence was highly prejudicial because of the similarities between the prior shootings and the Edwards Street shooting.[11] He contends that, because each shooting occurred at night, involved the defendant pulling up in a vehicle and firing multiple gunshots either out of the window or after getting out of the vehicle, and ended when he fled in the vehicle, the prior misconduct evidence was too similar to the charged conduct and, therefore, highly prejudicial. We conclude that the uncharged misconduct was not so similar as to have increased any prejudice to the point that it outweighed the probative value of the evidence. The jury heard testimony that the defendant shot at a building on Mather Street and fired gunshots on Acton Street but that, in the present case, two victims on Edwards Street were shot and killed.

The defendant nevertheless contends that the present case is analogous to *Raynor*, in which the defendant was tried and convicted of murder. *State* v. *Raynor*, supra, 337 Conn. 529. At trial, the state offered evidence of a subsequent shooting in which the defendant allegedly used the same weapon. See id., 557–58. Specifically, the subsequent shooting and the charged crime in *Raynor* involved two victims, one male and one

female who had been, or currently were, romantically involved and were shot at outside of their own homes at night, with dozens of gunshots having been fired. Id., 563. Unlike the situation in the present case, the subsequent shooting in *Raynor* was more similar to the charged crime with respect to location and the profile of the victims. Additionally, in *Raynor*, evidence of the uncharged shooting was introduced through the victim, who testified beyond the facts of the shooting itself. Id., 564. The victim of the uncharged shooting testified in detail about her feelings of fear during the shooting and her efforts to follow up with the police, in addition to facts outside the scope of the shooting that connected her son and the defendant. Id. This court emphasized how the victim's testimony greatly prejudiced the defendant. See id. Thus, *Raynor* is distinguishable from the present case.

"The question of whether the evidence is unduly prejudicial, however, does not turn solely on the relative severity of the uncharged misconduct. Instead, prejudice is assessed on a continuum—on which severity is a factor—but whether that prejudice is undue can only be determined when it is weighed against the probative value of the evidence." Id., 563. The evidence of the two prior shootings was highly probative in this case. The uncharged misconduct evidence was the only evidence connecting the defendant directly to the firearm used on Edwards Street. Walker's and Long's testimony tied the defendant to the two prior shootings, and Jachimowicz tied the gun from the prior shootings to the charged crimes. The firearm was never recovered in this case, and the state's witnesses who were with the defendant on the night of the murder were unable to describe the weapon he used.[12] The uncharged misconduct evidence was critical in establishing the identity of the shooter in this case. Therefore, contrary to the defendant's contention, the prior misconduct evidence was not merely cumulative but, rather, was highly probative. Additionally, the two prior shootings occurred less than three months prior to the charged homicides. This temporal proximity contributed to the probative value of the evidence. See id., 566 n.24.

Finally, it is significant that the trial court instructed the jury no fewer than five times about the limited purpose for which the uncharged misconduct evidence could be used, stating that it was being admitted "solely to the extent it bears [on] the [defendant's] having [had] the means to commit the crimes on trial before you." The court gave that instruction on the following occasions: (1) prior to the state's presenting any uncharged misconduct evidence, (2) following Long's testimony regarding the Mather Street shooting, (3) following the testimony of Walker regarding the Acton Street shooting, (4) following the direct examination of Jachimowicz, and (5) in its final charge to the jury. As this court has held, limiting instructions "serve to minimize any

prejudicial effect that . . . evidence [of prior misconduct] otherwise may have had . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 397–98, 844 A.2d 810 (2004).

Considering the manner in which the testimony was limited and the numerous cautionary instructions given to the jury, it is clear that the trial court did not abuse its discretion in admitting the uncharged misconduct evidence because the probative value of the evidence outweighed its prejudicial effect.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Prior to trial, defense counsel alerted the trial court to a third prior shooting that occurred on August 9, 2008, involving the same gun. Two people were shot in the third prior shooting, neither of whom identified the defendant as the shooter. The state limited its direct examination of its firearms expert, Edward Jachimowicz, to the shootings on Mather Street and Acton Street, as those were the two shootings with eyewitnesses identifying the defendant as the shooter. Defense counsel cross-examined Jachimowicz on the third incident.

[2] Each of the trial court's limiting instructions was largely the same as this first instruction.

[3] NIBIN stands for National Integrated Ballistic Information Network. NIBIN is a nationwide investigative system operated by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives that tracks firearms by the "microscopic marks that are left on bullets and fired cartridge cases." Jachimowicz explained that, when a casing is entered into the database, the program reads the marks on the fired cartridge case and assigns it a numerical value. When a similar casing comes in, the database checks it against the old casings and provides a suggestion to compare the casings.

[4] At the time of trial in 2018, the projectiles from the Mather Street shooting had been destroyed. The trial court overruled the defendant's objection to Jachimowicz' testimony that relied on these projectiles. The defendant does not raise any issue with this ruling on appeal.

[5] The trial court's entire instruction to the jury about evidence that had been admitted for a particular purpose or pertaining to the defendant's prior conduct was as follows: "Any testimony or evidence which I identified as being limited to a purpose, you will consider only as it relates to the limited purpose for which it was allowed, and you shall not consider such testimony and evidence in finding any other facts as to any other issue.

"The alleged conduct of the defendant on June 5, 2008, on Acton Street in Hartford and June 16, 2008, on Mather Street in Hartford [was] admitted for limited purposes, specifically, solely to the extent they bear [on] the [defendant's] having [had] the means to commit the crimes on trial before you and to the extent they bear [on] the identity of the person who shot Ortiz and Gresham. The court instructed you at that time, and does so again, that you could use that evidence to the extent that you find it should be given weight, only as to those issues and for no other purpose.

"The events of June 5 and June 16, 2008, are not the subject of any criminal charge in this case. This other conduct evidence is not being admitted to prove the bad character of the defendant or any propensity or criminal tendencies of the defendant. You may not consider this evidence as establishing a predisposition on the part of the defendant to commit crimes or a propensity to commit the crimes charged.

"You may consider such evidence if you believe it and further find that it logically, rationally and conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issue of the identity of the person who committed the crimes charged here and/or as it may bear on the issue that the [defendant] had the means to commit the crimes charged here. . . .

"You may not consider evidence of such conduct of the defendant for any purpose other than the ones I've told you because it may predispose your mind uncritically to believe that the defendant may be guilty of the offenses here charged merely because of the alleged other conduct. For this reason, you may consider this evidence only on the issues indicated and for no other purpose."

[6] The defendant does not challenge the relevance of the testimony of the four other witnesses who testified about the prior shootings. The defendant similarly does not challenge the trial court's admission of the evidence of prior misconduct as relevant to prove means.

[7] In its brief, the state argues that the defense never objected at trial to Jachimowicz' firearm identification testimony on the ground that it was not relevant to prove means or identity because the scientific validity of firearms identification was in doubt. We disagree. In his memorandum of law in opposition to the state's motion to admit prior misconduct evidence, the defendant argued that "the declaration that the prior incidents are relevant to show means and instrumentality may require much more evidence than the ballistics [expert's] simply stating it was the same firearm." The defendant relied on *State* v. *Raynor*, supra, 181 Conn. App. 760, and research challenging the validity of ballistics science to support his argument. At trial, prior to the admission of any evidence of prior misconduct, defense counsel renewed his objection to the "whole line of inquiry" into prior misconduct. Defense counsel again objected to the introduction of any evidence, including the analysis of the casings, related to the Mather Street shooting prior to Jachimowicz' testimony. Each time the state offered ballistics evidence as full exhibits, defense counsel responded that he had no objection that had not already been raised. Although we cannot now on appeal address any issues related to the scientific basis underlying Jachimowicz' expert opinion due to the defendant's failure to request a *Porter* hearing, the defendant did preserve his objection to the relevance of the ballistics testimony as it concerned uncharged misconduct.

[8] Nevertheless, the defendant improperly relies on our decision in *Raynor* to challenge whether Jachimowicz' testimony was relevant to the identity of the shooter in light of what he deems "new law" that "undermines the relevance that firearm and toolmark opinions may bear on establishing a shooter's identity." In *Raynor*, we held that the trial court abused its discretion by "deny[ing] the defendant's motion for a *Porter* hearing without considering the proffered evidence challenging the methodology supporting toolmark and firearm analysis . . . ." *State* v. *Raynor*, supra, 337 Conn. 544. In doing so, we recognized, as the defendant notes, that "[s]cience . . . is not static . . . [and] [m]ethodologies are continually challenged and improved . . . ." Id., 543. This court did not, however, as the defendant contends, "undermine" the general relevance of firearm analysis. Our holding was limited to the trial court's denial of the defendant's request in *Raynor* that it conduct a *Porter* hearing. See id., 543–44. Because the defendant in the present case did not request a *Porter* hearing, his reliance on *Raynor* is misplaced.

Additionally, Jachimowicz did not, as the defendant argues, "make absolute, unquestioned statements" about his findings. Rather, Jachimowicz properly testified that his opinion was based on "a reasonable degree of scientific certainty . . . ." Although Jachimowicz' testimony may not have been dispositive of the shooter's identity, that is an issue "of degree rather than kind" and in no way makes his testimony inadmissible. *State* v. *Collins*, 299 Conn. 567, 587 n.19, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

[9] The defendant also argues that, because Jachimowicz' methodology lacked scientific validity, the state could not prove that the firearm involved in the uncharged shootings was the same firearm involved in the present case, thus making the prior misconduct evidence more prejudicial than probative given the tenuous tie between the shootings. As discussed, however, the defendant waived any *Porter* claim, and, thus, to the extent his unpreserved *Porter* claim masquerades as a claim of undue prejudice, we do not review it. Additionally, to the extent the defendant argues that the expert's testimony, even if relevant, was insufficient to establish a link between the shootings, our case law has established that the state does not have to connect the weapon directly to the defendant and the crime charged with absolute certainty. Rather, all that is necessary for the evidence to have probative value is that the state introduces some evidence to link the weapon to the defendant and the charged offense. See, e.g., *State* v. *Edwards*, supra, 325 Conn. 144–45.

[10] Additionally, the state repackaged the items of evidence from the Acton Street shooting in new bags because the labels on the original evidence bags identified them as homicide evidence. Although the state did not do this at the trial court's behest, it is a critical factor in assessing actual prejudice to the defendant.

[11] The defendant argues in part that the Acton Street shooting and the

shooting in the present case are the same in that he "supposedly drove around and started firing his gun out on the street like a maniac." He attempts to support this contention with a quotation from the prosecutor's rebuttal closing argument to the jury characterizing the defendant as a "hothead . . . ." This argument does not hold water, as the prosecutor, in his rebuttal, was referring to the defendant's motive in the Edwards Street shooting at issue, not the prior misconduct.

[12] This is unlike *Raynor*, in which the trial court relied on the fact that a witness previously had identified the recovered murder weapon as the weapon the defendant had purchased prior to the murder and as the gun he used to commit the charged crime. See *State* v. *Raynor*, supra, 337 Conn. 565–66.

––––––––––––––––––––––––––